UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RANDY A. MARQUARDT,

      Petitioner,

v.                           Case No.:  2:22-cv-527-SPC-NPM

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## OPINION AND ORDER

Before the Court is Petitioner Randy A. Marquardt's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1).  Marquardt challenges a state murder conviction and resulting sentence of life imprisonment.

## Background

The State of Florida charged Marquardt with the second-degree murder of Charles Gales, plus first-degree burglary, false imprisonment, and possession of marijuana.  Public defenders Philadelphia Beard and Hanna Renna represented Marquardt at trial.  The state established the following facts through eye- and ear-witness testimony, physical evidence, and Marquardt's statements to police.  In the morning of September 30, 2013, Marquardt went to Gales' house with a gun he borrowed from a friend and shot

Gales six times, killing him.  He then went to a house where his ex-wife, Deborah DeSilva, was working as a babysitter and forced her to accompany him.  They left together in DeSilva's car with Marquardt driving.  DeSilva texted the child's parents to let them know she was leaving the house, and she convinced Marquardt to get rid of his bloody shirt and gun.

Marquardt and DeSilva returned to the house to pick up Marquardt's van.  They saw a police car, and DeSilva convinced Marquardt to wait at a nearby McDonalds.  DeSilva told police where to find Marquardt, and they arrested him.  Police interviewed Marquardt twice.  Marquardt initially denied seeing Gales that day, but he eventually admitted to killing him.  The State played recordings of the interviews for the jury.  The jury found Marquardt guilty on all counts, and the court sentenced him to life imprisonment.  Marquardt's direct appeal and collateral attacks on the conviction were unsuccessful, and he timely filed the habeas petition currently before this Court.

## Applicable Habeas Law

### A. AEPDA

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief.  28 U.S.C. § 2254.  Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).  A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision.  *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).

When reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

**B. Ineffective Assistance of Counsel**

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.*

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden*, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). And "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) (quoting *Richter*, 562 U.S. at 101). Thus, a habeas petitioner must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Sealey*, 954 F.3d at 1355 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The critical question on federal habeas review is not whether this Court can see a substantial likelihood of a different result had defense counsel taken a different approach. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021). All that matters is whether the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Id*. (quoting *Knowles v. Mirazayance*, 556 U.S. 111, 123 (2009)).

"An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." *Sealey*, 954 F.3d at 1355. And "[w]hile the *Strickland* standard is itself hard to meet, 'establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.'" *Id*. (quoting *Richter*, 562 U.S. at 105).

## Analysis

Marquardt states one ground for federal habeas relief, which Respondent concedes was exhausted in state court. Marquardt argues his attorneys' assistance was ineffective because they did not move to suppress the statements he made to police. Marquardt claims he had taken Percocet, Xanax, and marijuana just before his arrest, which made his statements

involuntary. To support his claim, Marquardt points to excerpts of his interview transcript, in which he asked police if he could smoke marijuana and stated he wanted to die.

After describing the *Strickland* standard, the state postconviction court rejected Marquardt's claim:

> 10. In Ground 1, Defendant alleges that counsel was ineffective for failing to file a motion to suppress Defendant's confession to police because he was under the influence of marijuana and prescription medication, and he suffers from a mental illness. Defendant contends that the answers provided to detectives during the interrogation were made by a mentally instable individual who was intoxicated or high on a controlled substance, and they were not Defendant's version of the facts. Defendant claims that he was unable to understand the meaning of his statements and answers to detectives. Defendant asserts that since counsel failed to suppress his confession it became a feature of the trial, and this caused Defendant not to prevail on his theory of self-defense. Defendant argues that without the prejudicial statements, the jury would have found that he acted in self-defense, and found him not guilty of the crime charged. Defendant contends that since he was prejudiced, the jury verdict is unreliable.

> 11. The State argues that the record reflects that Defendant's confession was freely and voluntarily given because Defendant knowingly and voluntarily waived his Miranda Rights. The State claims that Defendant's allegations are refuted by Defendant's ability to respond to the Detectives questions during his four-hour interview, and Defendant's testimony was directly refuted by his ability to lead detectives to the location where he hid the murder weapon and discarded his bloody shirt.

> 12. As to Ground 1, the Court finds that the record refutes Defendant's claim. At trial, Defendant testified that law enforcement read him his Miranda Rights, he voluntarily agreed to speak with them, and he told them the truth...As the State argued, although the Defendant testified at trial that he was under

the influence of drugs, blacked out before being interviewed, and had memory problems during his interview, Defendant's testimony was refuted by Defendant's ability to coherently respond to questions and interact with detectives during the interview that lasted approximately four hours.  Further, even if defense counsel had filed the motion to suppress, the Court would have denied the motion.  *See Teffeteller v. Duggar*, 734 So. 2d 1009, 1024 (Fla. 1999).  Defendant has failed to demonstrate both prongs of *Strickland*.  Therefore, Ground 1 is DENIED.

(Doc. 10-2 at 2780-81) (citations to the trial transcript omitted).  The state appellate court affirmed without a written opinion.

The state court's rejection of Marquardt's claim is consistent with federal law and supported by the record.  The only evidence Marquardt cites to support his claim are a few excerpts of his interview that he describes as "manic and bizarre utterances and responses." (Doc. 1 at 11).  But a review of the complete interview transcripts shows that Marquardt was able to understand and answer the detectives' questions. (*See* Doc. 10-2 at 634-840).  He was coherent and responsive throughout the interview.  The detective who led the interviews testified that Marquardt did not appear to be under the influence of drugs, alcohol, or any other substance. (Doc. 10-2 at 663).  And as the state court noted, Marquardt was able to lead police to the locations where he left the gun and his bloody shirt.

The postconviction court reasonably found that the record refuted Marquardt's claim that his confession was involuntary.  A motion to suppress would have been futile.  The constitution does not require defense counsel to

8

raise meritless arguments.  The Court thus denies Marquardt's federal habeas claim.

## DENIAL OF CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (citations omitted).  Marquardt has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is now

**ORDERED:**

Petitioner Randy A. Marquardt's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1) is **DENIED**.  The Clerk is **DIRECTED** to

terminate any pending motions and deadlines, enter judgment, and close this case.

      **DONE** and **ORDERED** in Fort Myers, Florida on March 28, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record